## EVELYN FISK *vs.* JAMES B. BRAYMAN.

### PROVIDENCE—FEBRUARY 17, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Construction of Deeds.*

In the construction of deeds and other written instruments it is a cardinal rule that effect be given to the intent of the parties so far as the same can be ascertained under, and is not in conflict with, rules of law.

The entire instrument is to be considered in ascertaining the meaning of a particular part thereof.

(2) *Reservation in Deed.*

A grantor in his deed reserved "the leasing of ice-houses now standing on the above-granted premises (as I now have) for twenty-five years," a lease thereof having been made by him for a term that had not expired:—

*Held*, that the effect of the reservation was a lease of said ice-houses to the grantor by the grantee for the term mentioned.

*Held*, further, that, as a grant carries with it whatever is necessary to the reasonable enjoyment of the thing granted, such lease was also of the land on which the ice-houses stood.

(3) *Right of Entry. Rent.*

When the relation of landlord and tenant is created, as between lessor and lessee, the landlord is invested with the rights to receive rent, and to eject the tenant for non-payment thereof, or by notice to quit.

A. leased premises to B. on consideration that the latter furnish A. and his family with ice:—

*Held*, that the obligation to deliver ice did not affect its character as rent, but related only to the manner of payment.

Rent is the right to a profit, whether of money or products; it is compensation to him who is entitled to possession of the leased premises for the use and occupation thereof by another.

(4) *Ejectment. Chattel Real.*

The above-mentioned grantor deceased intestate, and plaintiff was the residuary devisee under the will :—

*Held*, that she was entitled to lease the premises in question under said reservation, and, as owner of such chattel real, could maintain an action for the possession of said premises.

TRESPASS AND EJECTMENT brought during the term hereinafter mentioned, by a residuary devisee, for the possession of premises which were the subject of a reservation in a deed

of the testator in which the grantor retained the right for twenty-five years to lease ice-houses standing thereon. Certified from the Common Pleas Division and heard on agreed statement of facts.

TILLINGHAST, J.   This is an action of trespass and ejectment to recover possession of certain ice-houses located near the Belleville South Pond in North Kingstown.

The case was commenced in the District Court of the Second Judicial District, where, after decision for the plaintiff for possession and costs, the defendant claimed a jury trial and the case was sent to the Common Pleas Division. There the parties agreed upon the facts, and the case was certified to this Division for trial.

The agreed statement of facts, taken in connection with the exhibits annexed thereto and made part thereof, show that William E. Pierce, the plaintiff's father, in his life-time leased certain premises to the defendant to be used for ice-houses, in consideration that said defendant furnish said Pierce and his family with ice; that defendant occupied said premises and furnished ice to said Pierce during his life-time; that on August 19, 1882, the premises on which said ice-houses were situated were conveyed to one John Maglone by deed from said Pierce, the grantor making certain reservations, amongst which was the following : "also the leasing of ice-houses now standing on the above granted premises (as I now have) for twenty-five years.   Meaning to convey all of the Belleville Estate now owned by me except the above named Oak Hill Mill Estate of about fourteen acres, the North Pond Dam, the privilege of dirt and gravel for repairing dams, the leasing of ice-houses, as aforesaid, and the gardens as now used for the Narragansett Mill;" that said William E. Pierce deceased in November, 1889, and that from and after that time the defendant refused to furnish the plaintiff with ice; that under the will of said William E. Pierce, as modified by a decree of this court, the plaintiff was made the residuary legatee, and is also a tenant in common with the other heirs of the real estate.

(2)    The question to be decided, under the facts as thus stated, is whether the plaintiff can maintain her action of trespass and ejectment.   The defendant contends that the plaintiff shows no legal title to the premises in question and no right of entry thereon ; that the reservation in question simply amounts to a reservation of the rent of the ice-houses, which is an incorporeal hereditament, and, hence, that the action will not lie ; citing *Hancock* v. *McAvoy*, 18 L. R. A. and note ; Tyler on Eject. 41, and cases cited.   The plaintiff contends, on the contrary, that by reason of the reservation in question, she, as landlord, has a right of entry upon the premises, and, also, that the reservation of the ice-houses should be held to include the use of the land necessary for the enjoyment thereof.   The plaintiff further contends that the statute (Gen. Laws R. I. cap. 244, § 49) does not make any particular estate in the premises necessary in order to maintain such an action, but that "if he prove that he is entitled to such an estate as he claims in the premises, whether as heir, devisee, purchaser or otherwise, and, also, that he has a right of entry therein, this shall be deemed sufficient proof of his seizin as alleged in his declaration."

It will readily be seen that the decision of the case, as to the merits thereof, turns upon the construction to be put upon the reservation contained in the deed.   If it be held that the effect thereof was simply to reserve the *rent* of the ice-houses, as contended by the defendant, the action cannot be maintained, as there would then be no corporeal hereditament of which the plaintiff could be put in possession, nor any right of entry upon the premises.   Newell on Ejectment, 17 and notes ; Taylor, Land. & Ten. § 699 ; *Black* v. *Hepburn*, 2 Yeates, 331 ; *Jackson* v. *May*, 16 Johns. 184.   But if it be held that the effect of the reservation was to except from the operation of the deed the ice-houses, and the land on which they stand, for twenty-five years, thereby creating a leasehold interest therein, then the plaintiff's action can be maintained.

(1)    A cardinal rule in the construction of deeds and other written instruments is to endeavor to give effect to the intent

of the parties whenever that intent can be ascertained, in so far as the rules of law will permit ; that is, so far as the intent does not run counter to those rules. *Tillinghast* v. *Fry*, 1 R. I. 53 ; *Young, Petitioner*, 11 R. I. 636 ; *Mowry* v. *Bradley*, 11 R. I. 370 ; *Waterman* v. *Andrews*, 14 R. I. 589 ; *Littlefield* v. *Mott*, 14 R. I. 288 ; *Langley* v. *Honey*, 20 R. I. 698. The entire instrument is to be considered in ascertaining the meaning of a particular part. *Allen* v. *Holton*, 20 Pick. 458 ; *Cholmondeley* v. *Clinton*, 2 Jac. & W. 134.

"In construing a deed," says Mr. Washburn in his work on Real Property (Vol. 3, 409), "the court places itself as nearly as possible in the situation of the contracting parties ; and their intent will be ascertained in the same manner as in the case of any other contract. If the intention is not, then, apparent from the deed, resort is to be had to the rules of construction, which give greater effect to those things about which the law presumes the parties are the least liable to make a mistake. But arbitrary rules are not to be invoked if the intention of the parties can be plainly discovered without their aid. Grants are to be construed according to the subject matter, and the natural presumptions arising from their terms and thus render these an exposition of a rational intention."

(2) Applying the rule of construction, as thus stated, to the deed in question, what do we find ? In the first place, it is clear that the parties thereto understood and intended that the use and enjoyment of the ice-houses did not pass to the grantee at the date of the deed, but were, in effect, reserved to the grantor for twenty-five years. It is also clear that the ice-houses were to remain as they were upon the premises conveyed for that length of time; the language "now standing on the above-granted premises (as I now have)"—that is, as I now have leased them—showing that the grantor was to have the right to occupy the ground on which they stood ; that is, that he reserved a leasehold interest therein. In short, the effect of the reservation was to lease to the grantor by the grantee the ice-houses, and the land on which they stood, for twenty-five years. Indeed, if this were not so, the

reservation would be a nullity ; for the right to lease buildings without the right to permit the lessee to occupy the ground on which they stand would not only be an anomaly, but utterly nonsensical as well. Moreover, we do not see why the familiar principle of law that a grant carries with it by implication, as incidental thereto, whatever is necessary to the reasonable enjoyment of the thing granted, should not apply as well to an exception or reservation in favor of the grantor. And such seems to be the law. Thus it was held in *Allen* v. *Scott*, 21 Pick. 29, that if a man lets his manor, except the woods, etc., the soil is excepted. We think it is clear that if the grantor reserves a building on the granted premises, together with the right to rent the same for a certain definite period, this is in effect a reservation of the use of the land on which the building stands for the specified time. As said by Brayton, J., in *Ballou* v. *Harris*, 5 R. I. 424, " We must presume that it was some practical benefit which the grantor desired to reserve, and which the grantee consented should be reserved." In *St. Anthony Falls Co.* v. *Minneapolis*, 41 Minn. 270, it was held that while a reservation in a deed in favor of the grantor is to be construed more strictly than a grant, yet that such a reservation will include the use of such means as are indispensably necessary to the exercise of the right reserved. In *Noble* v. *Illinois Central Railway Co.*, 111 Ill., 447, it was held that the reservation must be so construed as to give a practical right and not so as to render it worthless and unavailing. In *Dand* v. *Kingscote*, 6 M. & W. 197, Parke, B., in speaking of the reservation there in question, says : " This reservation is to be construed according to the rule laid down in Shepard's Touchstone, 100, in the same way as a grant by the owner of the soil of the like liberties ; for what will pass by words in a grant will be excepted by like words in an exception." See also *Sanborn* v. *Hoyt*, 24 Me. 118 ; *Matteson* v. *Wilbur*, 11 R. I. 545 ; Tiedeman on Real Property, § 843 ; *Crosby* v. *Loop*, 13 Ill. 625.

Suppose it be held that under the reservation in question the grantor only had the naked right to lease the ice-houses,

of what practical value would such a right be ? Manifestly it would be of very little if any value at all. True, he might lease the premises, but he would be utterly powerless to put the lessee in possession, except with the consent of the owner of the land. And even if the premises should be occupied by virtue of a letting, the landlord could not dispossess the tenant either by process of law or otherwise, as he would have no right to the possession of the premises, but would himself be a trespasser the moment he entered thereon ; and thus, his only remedy, in any event, would be an action for the rent.

(3)   Again, the right to lease premises necessarily involves the right to enter into the relation of landlord and tenant, as between the lessor and lessee, and when this relation is created, certain rights and liabilities immediately attach, amongst which, on the part of the landlord, is the right to recover the stipulated rent and to eject the tenant for the non-payment thereof, or upon giving him the statutory notice to quit. The relation also implies ownership, or at least the right to possession on the part of the landlord when the lease is terminated ; and the tenant, having recognized such ownership or right of possession by the hiring of the premises, is generally held to be estopped from questioning his landlord's title in an action for the recovery of the possession thereof, so long, at any rate, as the true owner leaves him in unmolested occupation. Washburn on Real Property, 521, 98 ; *Providence Co. Savings Bank* v. *Phalen*, 12 R. I. 495 ; 1 Wash. Real Prop. 5th ed. 590–591 ; Taylor's Land. & Ten. § 705 ; *DeWolf* v. *Martin*, 12 R. I. 533. In this connection it is to be observed that the defendant recognized the right of the grantor to lease said ice-houses to him after the land was deeded to Maglone in the same manner as he had done before, and that the defendant continued to pay the stipulated rent therefor up to the time of the grantor's death, which was about seven years after the giving of said deed. This shows not only that the relation of landlord and tenant continued to subsist between the grantor and the defendant after the deed to Maglone the same as it had subsisted before, but also that

the grantee, by acquiescing therein without objection, so far as appears, recognized the right of the grantor to lease and control the ice-houses to the same extent that he had done before the sale of the premises. Moreover, the only ground upon which the defendant refused to continue the payment of the rent after the death of the said Wm. E. Pierce, as stated in the brief of his counsel, was that on the death of said Pierce the family relation, as set forth in the agreed facts, ceased to exist.

In this connection we will briefly consider the contention of defendant's counsel, to the effect that, upon the death of the lessor of defendant, the family relation ceased to exist (the plaintiff having married during the life-time of her father), and, hence, that the agreement to deliver ice to the lessor and his family was terminated. Even conceding this to be so, it has no material bearing on the case before us. The fact that the defendant was to deliver ice to the lessor and his family did not affect its character as rent, but related only to the manner of payment. Rent is a right to a profit, usually, though not necessarily, money, for it frequently consists of a part of the products of the land, labor, etc.; 20 Am. & Eng. Enc. of L. 1036. It is the compensation, either in money, provisions, chattels, or labor, which is received by the owner of the soil, or the person entitled to the possession of the premises leased, for the use and occupation thereof. But the mere fact that the rent was to be paid in ice in no wise limits or restricts the aforesaid reservation of the right to lease the premises in question, which is general, and contains no reference to the manner in which the rent therefor shall be paid or collected ; thus leaving it to the owner of the leasehold estate to stipulate as to the manner of payment. Moreover, the defendant admits that he was a tenant of the premises only from year to year, so that the agreement as to the manner of payment of rent was subject to the will of the lessor at the expiration of each year at any rate.

Finally, then, as to the right of the plaintiff to maintain (4) the action :

It appears from the record that she is the residuary devisee

under the will of her late father, who was the defendant's lessor, and it is not denied that as such she is entitled to lease the premises in question under said reservation. It also appears that said Wm. E. Pierce deceased about ten years since, so that it is fair to presume, in the absence of any claim or suggestion to the contrary, that his estate is settled, and that the property in question is not needed to pay his debts. This being so, we think the plaintiff, as the owner of the chattel real in question, has the right to maintain this action for recovery of the possession thereof. In 1 Washburn on Real Property, 611, under the caption : "Of Descent and Devises of Terms," the author says : "From the chattel character of terms for years, it is hardly necessary to add that they may be devised or disposed of in payment of debts by an executor or administrator, and when devised they pass without any formal assignment."

In Burton on the Law of Real Prop. p. 301, the author states the law thus : "Chattels real are transmitted by will in the same manner as chattels personal ; that is, they go in the first instance to the executor or executors, for the payment of the testator's debts ; in order to which not only the single executor, or all of them if more than one, but any one without the others, has an absolute power to assign and dispose of them. But if bequeathed to any person by the will, they pass to him without any assignment, by the mere signification of the executor's assent ; after which, if the possession be withheld, the legatee has his remedy by ejectment. And it seems to be immaterial whether the chattel be particularly named in the will, or included in a general residuary bequest." See also Gen. Laws R. I. cap. 203, § 42.[1]

Judgment for the plaintiff for possession, with ten cents damages and costs.

*Thomas F. I. McDonnell*, for plaintiff.
*James T. Eagan*, for defendant.

---

[1] SEC. 42. Title to real or personal estate shall pass by will when such will has been finally proved by the probate court, or, on appeal, by the supreme court : . . . . *Provided, however,* that when any such will is duly proved, or proved and recorded, as aforesaid, title to lands as devised thereby shall relate back to the date of the death of the testator.