UNITED STATES TRUST CO. OF NEW YORK, ETC., ET AL., PLAINTIFFS, v. THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided February 4, 1987.

*Richard O. Venino, Jr.* for plaintiff.

*Robert P. Grabowski,* Dep. Atty. Gen., for defendant (*W. Cary Edwards,* Atty. Gen. of N.J., attorney).

STAMELMAN, J.S.C.

This is an action for possession of certain real estate in Monmouth Beach, which had been conveyed in 1894 to the United States to be used for a lifesaving station. The issue to be resolved is whether the conveyance was an estate in fee simple or a fee determinable with a possibility of reverter.

Edward A. Walton and George F. Baker conveyed the premises to the United States by deed dated August 1, 1894. Plaintiffs are the successors in interest of the alleged reversionary interest of the grantors. The deed to the United States was pursuant to a statute enacted by Congress on March 3, 1875, 18 *Stat.* 371, authorizing the Treasurer of the United States to acquire the right to use and occupy certain sites for lifesaving and lifeboat stations. The property was used by the United States Coast Guard as a lifesaving station until 1965. The New

Jersey Marine Patrol began using the premises in 1965 for the supervision of boat safety. It continues to use the property for that purpose. The State of New Jersey purchased the property from the United States Government by a quit-claim deed dated August 15, 1968 for $29,800. During the negotiations for the sale the United States advised the State of New Jersey that there might be a title problem because of the decision in *United States v. Roebling*, 244 *F.Supp.* 736 (D.N.J.1965), involving a similar conveyance.

The dispute between the parties involves the interpretation of the 1894 deed. Defendant alleges that there was a conveyance of a fee simple estate to the United States. Plaintiffs allege that a fee simple determinable estate with a possibility of reverter was conveyed to the United States. They argue that because the property ceased to be used as a lifeboat station in 1965 the premises reverted to plaintiffs.

The relevant provisions of the deed are as follows:

Whereas, The Secretary of the Treasury has been authorized by law to establish the Life-Saving Station herein described;

And whereas, Congress, by Act of March 3, 1875, provided as follows, viz: "And the Secretary of the Treasury is hereby authorized, whenever he shall deem it advisable, to acquire, by donation or purchase, in behalf of the United States, the right to use and occupy sites for Life-saving or Life-boat Stations, Houses of Refuge, and sites for Pierhead Beacons, the establishment of which has been, or shall hereafter be, authorized by Congress;"

And whereas, the said Secretary of the Treasury deems it advisable to acquire, on behalf of the United States, the right to use and occupy the hereinafter-described lot of land as a site for a Life-Saving Station, ...:

.    .    .    .    .    .    .    .    .

[W]ith full right of egress and ingress thereto in any direction over other lands of the grantor by those in the employ of the United States, on foot or with vehicles of any kind, with boats or any articles used for the purpose of carrying out the intentions of Congress in providing for the establishment of Life-Saving Stations, and the right to pass over any lands of the grantor in any manner in the prosecution of said purpose; and also the right to erect such structures upon the said land as the United States may see fit, and to remove any and all such structures and appliances at any time; the said premises to be used and occupied for the purpose named in said Act of March 3, 1875:

To have and to hold the said lot of land and privileges unto the United States from this date.

> And the said parties of the first part for themselves, their executors, and administrators, do covenant with the United States to warrant and defend the peaceable possession of the above-described premises to the United States, for the purposes above named, for the term of this covenant, against the lawful claims of all persons claiming by, through or under them;
>
> And it is further stipulated, that the United States shall be allowed to remove all buildings and appurtenances from the said land whenever it shall think proper, and shall have the right of using other lands of the grantor for passage over the same in effecting such removal.

The instrument as a whole must be reviewed to determine the intent of the parties. *Oldfield v. Stoeco Homes, Inc.*, 26 *N.J.* 246, 256 (1958).

An estate in fee simple determinable is an estate in fee simple that automatically terminates upon the occurrence of a given event. The grantor retains a possibility of reverter upon the occurrence of a stated event. *Hagaman v. Bd. of Ed. of Tp. of Woodbridge*, 117 *N.J.Super.* 446 (App.Div.1971).

Plaintiffs allege that the language in the deed indicates that the parties intended a conveyance of an estate less than a fee simple absolute, and argue that the conveyance was given for one purpose, namely "the right to use and occupy the hereinafter described lot of land as a site for a Life Saving Station...." It is the position of the plaintiffs that when the use ceased title reverted to the plaintiffs. The deed provides that the United States had the right to erect structures and remove them from the premises. Plaintiffs argue that this language indicates that the parties intended to convey an estate less than a fee simple absolute because there would not be a need to provide for the right to erect and remove structures from the premises if a fee simple absolute were conveyed.

Three Federal District Court decisions involving property that was purchased by the United States pursuant to 18 *Stat.* 371 have held that the United States obtained a fee determinable estate. The first case is *Etheridge v. United States*, 218 *F.Supp.* 809 (E.D.N.C.1963). That case involved an action based on an implied contract to recover reasonable value of certain land in North Carolina which had previously been used

by the United States for a lifesaving station. The court held that when the United States ceased using the property for a lifesaving station, it automatically reverted to the plaintiff. It decided that plaintiff was entitled to recover the reasonable value of the property for the period after the United States began using the property for other purposes.

The second case, chronologically, is *United States v. Beals*, 250 *F.Supp.* 440 (D.R.I.1966). In that case, suit was brought by the United States for declaratory judgment that the conveyance created a fee simple estate. The provisions in the deed were similar to the ones in our case. The court held that the intent of the parties was that the land was to be used for a site for a lifesaving station and that upon cessation of that use the interest of the United States terminated. The court decided that the United States had no title to the property after it stopped using the property as a lifesaving station.

The next decision is *United States v. Roebling*. In that case the court held that the United States was not entitled to specific performance of its contract to sell a lifesaving station in the Borough of Mantoloking, County of Ocean, New Jersey, and found that the language in the deed to the United States for the use as a lifesaving station raised a substantial question as to whether the United States received a fee simple interest or a fee determinable interest. It determined that the defendant was justified in refusing to accept title to the property because the title was unmarketable.

Our case is distinguished from *Beals, Etheridge,* and *Roebling*. In *Beals* the consideration the United States paid for the property was $250 and in *Etheridge* the consideration was $100. A nominal consideration could imply an intent to convey a determinable interest. In our case the United States paid $2,400 to the grantors in 1894, which indicates an intention by the parties that the United States acquire a fee simple absolute. The *Roebling* case is also distinguished from our situation. In *Roebling*, the issue before the court was whether the United States was entitled to specific performance. The court held

that there was a cloud on the title which made it unmarketable but did not decide whether the deed to the United States created a fee simple absolute or a fee simple determinable estate, which is the issue before this court.

*Beals, Etheridge* and *Roebling* were followed by two Federal District Court decisions that reached opposite results. In *Selectmen of Town of Nahant v. United States,* 293 *F.Supp.* 1076 (D.Mass.1968), plaintiff-municipality sought to recover compensation from the United States for the use and occupancy of certain real estate acquired by the United States for a lifesaving station. The property had been acquired in 1898 pursuant to 18 *Stat.* 371 to be used and occupied for the purposes set forth in the statute. The court denied plaintiff's claim and held that the United States received a fee simple estate and not a fee simple determinable estate. It stated that there was no language in the deed indicating that the estate was to expire when the property ceased to be used for a lifesaving station. The court held that the mere recital in the deed of the purpose for which the land was conveyed was not sufficient to impose any limitation on the estate conveyed.

The second case is *Lethin v. United States,* 583 *F.Supp.* 863 (D.Ore.1984). In that case the court rejected the holdings of *Beals* and *Etheridge,* and stated, at 872, "[T]he deed contains no language suggesting a reversion or automatic expiration of the easement if used for other purposes...."

*Hagaman v. Bd. of Ed. of Tp. of Woodbridge,* is analagous to our case. In that case plaintiff also claimed a right of possession because of a reversionary interest. The deed contained the following provisions:

> It is the understanding of the parties to this conveyance that the hereinabove described land is conveyed solely for the purpose of being used for the erection and maintenance of a public school or schools and that the Board of Education of Woodbridge Township, New Jersey, will erect a school thereon or before the school year of 1926 and use the building for school purposes.

A school was built on the property and it was used as a school until 1968 when it was converted to a children's recreational park. The court stated that an intent to create a fee determin-

able estate is usually indicated by the use of words denoting duration of time such as "while," "during," "so long as." These types of words were not found in the deed and the court held that the conveyance constituted a fee simple absolute and not a fee determinable with a possibility of reverter. The court stated that language in an instrument which is alleged to create a fee simple determinable is to be strictly construed. When a choice exists the instrument is to be construed against rather than in favor of a forfeiture.

In our case, as in *Selectmen, Lethin* and *Hagaman,* there are no words of limitation to designate that the grantor was retaining a reversionary interest or that the interest the United States acquired was anything less than a fee simple estate. The fact that the United States paid $2,400 for the property in 1894 indicates that the parties intended the United States to acquire a fee simple estate. The language in the deed refers to the statute that gave the United States the authority to purchase the land and the purpose for which the land was to be used. The deed does not express an intent that the property revert to the grantors if the expressed use ceases. The August 1, 1894 deed conveyed a fee simple estate to the United States. Plaintiffs do not have a right of possession.